UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD WALLINGTON,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 2:17-cv-02273-KJN<br><br><br><br>ORDER |

Plaintiff Richard Wallington, who proceeds without legal counsel, seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1] Plaintiff filed a response and notice, which the court construes as plaintiff's motion for summary judgment. (ECF Nos. 14, 15.) The Commissioner opposed plaintiff's motion and filed a cross-motion for summary judgment. (ECF No. 16.)

After carefully considering the record and the parties' briefing, the court GRANTS plaintiff's motion for summary judgment, DENIES the Commissioner's cross-motion for

---

[1] This action was referred to the undersigned pursuant to Local Rule 302(c)(15) and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes. (ECF Nos. 6, 13.)

1

summary judgment, and REMANDS the case for further administrative proceedings consistent with this order.

I.     BACKGROUND

Plaintiff was born on July 31, 1968; has completed high school and some college; is able to communicate in English; and previously worked as a sales manager.[2] (Administrative Transcript ("AT") 35, 61, 171.) On June 17, 2015, plaintiff applied for DIB and SSI, alleging that his disability began on January 9, 2015. (AT 171, 178.) Plaintiff claimed that he was disabled due to hip problems. (AT 53, 64.) After plaintiff's application was denied initially and on reconsideration, an ALJ conducted a hearing on January 5, 2017. (AT 32-50.)

At the hearing, plaintiff was represented by counsel. Plaintiff's counsel asserted that plaintiff was part of a class action lawsuit involving metallic poisoning—also known as metallosis—caused by faulty bilateral hip replacement surgery. (AT 36.) Due to a lack of evidence on this issue, the ALJ requested that plaintiff's attorney supplement the record with studies on metallosis. (AT 49.) The ALJ also ordered plaintiff to attend a consultative examination for an updated functional assessment and to have a blood test to measure the chromium and cobalt ions levels in plaintiff's blood. (AT 47-48).

Following the hearing, plaintiff's attorney submitted medical records from Thomas J. Blumenfeld, M.D. from 2012, and pointed out that these records demonstrate that plaintiff's "chromium and cobalt ion levels increased and as of 12/20/12 [the plaintiff] had elevated cobalt and chromium ion levels." (AT 278, 435-51.) Plaintiff's attorney also submitted several peer-reviewed articles from medical journals that discussed metallosis caused by faulty hip replacement surgeries. (AT 278-329.)

On March 11, 2017, plaintiff underwent a consultative examination by Richard Chun, M.D. and had a blood test performed. (AT 452-63.) Dr. Chun did not review any of plaintiff's medical records as part of his evaluation. (AT 459-63.) Additionally, the blood test did not

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

2

measure the levels of chromium and cobalt ions in plaintiff's blood.  (AT 458.)

The ALJ subsequently issued a decision dated May 24, 2017, determining that plaintiff had not been under a disability as defined in the Act, from January 9, 2015, through the date of the ALJ's decision. (AT 15-23)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on September 1, 2017.  (AT 1-3.)  Plaintiff subsequently filed this action on October 30, 2017, to obtain judicial review of the Commissioner's final decision.  (ECF No. 1.)

II. ISSUES PRESENTED

Plaintiff, who proceeds without legal counsel at this stage, raises a general challenge to the ALJ's decision.  (See ECF Nos. 14, 15.)  Liberally construed, the central issue plaintiff raises is whether the ALJ erred by finding that plaintiff does not suffer from metallosis caused by faulty bilateral hip replacement.

III. LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

////
////
////
////

1  IV.     DISCUSSION

2          A.      Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[3] Preliminarily, the ALJ determined that plaintiff meets the insured status requirements of the Act through June 30, 2020. (AT 17.) At step one, the ALJ concluded that plaintiff has not engaged in substantial gainful activity since January 9, 2015, the alleged onset date. (AT 18.) At step two, the ALJ found that plaintiff has the severe impairment of status post bilateral hip arthroplasty/replacement with chronic pain. (Id.) Importantly, the ALJ determined that "there is no evidence in the record to corroborate the claimant's allegations" of "metallosis due to faulty bilateral hip replacements." (Id.)

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

At step three the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 18.) Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC"), finding that plaintiff could perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that plaintiff "can stand and/or walk for four hours in an eight-hour day, can frequently climb ramps and/or stairs, cannot climb ladders, ropes or scaffolds, can occasionally stoop, crouch, kneel and/or crawl, can frequently push and/or pull with the bilateral lower extremities and must avoid temperature extremes, vibration and hazards." (AT 18-19.)

At step four, the ALJ determined that plaintiff is unable to perform any past relevant work. (AT 21.) However, at step five, the ALJ found that, in light of plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff can perform. (AT 22.) Thus, the ALJ concluded that plaintiff was not under a disability, as defined in the Act, from January 9, 2015, through May 24, 2017. (Id.)

B. Plaintiff's Substantive Challenges to the Commissioner's Determinations

1. *Whether the ALJ erred at step two by finding no metallosis.*

Liberally construed, plaintiff's central argument is that the ALJ incorrectly concluded that plaintiff does not have a severe impairment of metallosis, which tainted the rest of the ALJ's decision in this matter. (See ECF Nos. 14, 15.) Plaintiff raised the same argument before the Appeals Council when he was still represented by an attorney. (See AT 337-40.) The Commissioner asserts that "since [p]laintiff did not establish the existence of [metallosis] with objective medical evidence, the ALJ properly rejected [p]laintiff's claims of this impairment." (ECF No. 16 at 8.) The Commissioner's argument is not well-taken.

At step two of the sequential analysis, an impairment or combination of impairments is deemed to be severe if it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a). This "inquiry is a de minimis screening device to dispose of groundless claims. An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a

5

minimal effect on an individual's ability to work." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal citations and quotation marks omitted).

Generally, a claimant bears the burden of providing medical and other evidence that support the existence of a medically determinable impairment. Bowen v. Yuckert, 482 U.S. 137, 146 (1987); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998) ("At all times, the burden is on the claimant to establish her entitlement to disability insurance benefits."). At the same time, however, "[t]he ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel.'" Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (citing Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).

This case does not represent a simple instance where a plaintiff failed to provide medical evidence to support his allegations, as the Commissioner asserts. At the hearing, the ALJ indicated that the record did not include any evidence of metallosis. (See AT 43-44.) Plaintiff responded that metallosis is demonstrated by the "levels of cobalt and chromium in [a patient's] blood." (AT 47.) Thereafter, plaintiff's attorney submitted additional medical records from Dr. Blumenfeld. (See AT 435-51.) These records clearly demonstrate that on August 30, 2012, plaintiff's chromium and cobalt ion levels were low, immediately before plaintiff underwent right hip replacement surgery. (AT 440.) Then, on December 20, 2012, after right hip replacement and shortly before left hip replacement surgery, plaintiff presented with "dramatically elevated cobalt and chromium ion levels." (AT 445.)

In an apparent attempt to fully and fairly develop the record, the ALJ ordered an updated functional examination and a blood test. (AT 47-49.) As ordered, the blood test was supposed to measure the levels of chromium and cobalt ions in plaintiff's blood (AT 47), but the test that was performed did not measure these levels. (AT 458.) Moreover, the consultative examiner did not review any of plaintiff's medical records as part of his evaluation. (AT 459-63.)

Thus, the blood test and examination that were actually performed were clearly insufficient instruments to help the ALJ assess plaintiff's alleged metallosis impairment. However, the ALJ ignored these inadequacies and the elevated chromium and cobalt ion levels documents by Dr. Blumenfeld. Instead, the ALJ concluded that there is no evidence in the record to corroborate plaintiff's allegations of metallosis and that plaintiff presented nothing more than "bare bones" allegations, which are insufficient to determine that an impairment exists. (AT 18.) This is clear error.

Even assuming that the ALJ was not required to order a blood test in the first instance, the ALJ's conduct after ordering such a test constitutes reversible error. Logically, when an ALJ seeks to develop the record on a discrete issue by ordering a test to measure specific things, the ALJ may not conclude that there is "no evidence" on the issue, after the test that is performed fails to measure what the ALJ ordered. Especially when plaintiff provides independent evidence relevant to the discrete issue, as plaintiff did here with the records from Dr. Blumenfeld.

Furthermore, this error was not harmless. The ALJ's improper conclusion that the record lacks any evidence of metallosis affected more than the ALJ's findings at step two, as this conclusion underpinned the ALJ's reasoning at the subsequent steps of the sequential analysis. For example, the ALJ gave considerable weight to Dr. Chun's consultative examination, even though Dr. Chun did not review Dr. Blumenfeld's records, and apparently only had access to a single blood test that did not measure chromium and cobalt ion levels. (See AT 19, 452-63.)

Therefore, this matter is remanded for further development of the record, as to plaintiff's alleged metallosis impairment.

2. *Plaintiff's remaining challenges.*

Liberally construed, plaintiff also challenges the ALJ's weighing of the medical evidence; the ALJ's credibility determinations; the ALJ's RFC determination; and the ALJ's step five determination. However, the ALJ's conclusions in these areas are subject to reevaluation on remand because the ALJ failed to fully and fairly develop the record. As such, the undersigned declines to reach these issues at this juncture.

////

Importantly, the ALJ is not limited to simply ordering an appropriate blood test and consultative examination. Rather, the ALJ is free to develop the record in any other respects deemed appropriate, such as conducting a subsequent hearing and obtaining vocational expert testimony. The court does not instruct the ALJ to credit any particular opinion or evidence on remand. Indeed, the court expresses no opinion regarding how the evidence should ultimately be weighed, and any ambiguities or inconsistencies resolved, at any particular step on remand, provided that the ALJ's decision is based on proper legal standards and supported by substantial evidence in the record as a whole.

V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF Nos. 14, 15) is GRANTED.
2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is DENIED.
3. The final decision of the Commissioner is REVERSED, and the case is REMANDED for further administrative proceedings consistent with this order pursuant to sentence four of 42 U.S.C. § 405(g).
4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated: May 8, 2019

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/wall.2273